JERRY W. MANN                    12/8/2005                    MANN v. HARTFORD INS.
Vol. 1                                                        A05-0038 Civil

Page 18

```
 1         of AARP that Hartford had a special program for senior
 2         citizens and you could save a lot of money on insurance.
 3    Q    Okay.
 4    A    So that was my reason, was the money, not the clock.
 5    Q    Right.  You probably already had a clock.
 6    A    Yeah, right, it was this little cheap thing made in China.
 7    Q    So you sent in the questionnaire and then as you recall
 8         someone called you on the phone from Hartford?
 9    A    I don't remember.  I'm sure they did because I would not
10         have -- I would not have called them so I'm sure they
11         called me from the card I mailed in.
12    Q    Okay.  Do you recall -- I don't suppose you recall the
13         name of the person you spoke to at Hartford?
14    A    No.  No.
15    Q    Do you recall whether it was a man or a woman?
16    A    No.
17    Q    Do you recall how long the call was?
18    A    No.
19    Q    Do you remember any particular aspects of insurance that
20         you talked about during the phone call?
21    A    Just that my bank had told me that I had to have full
22         coverage because I financed a '93 Suburban so I had to
23         have full coverage.
24    Q    And when you say, full coverage, you meant coverage that
25         would cover damage to the '94 Suburban?
```

Exhibit C
Page 11 of 24 Pages

Computer Matrix, LLC              Phone - 907-243-0668        jpk@gci.net
310 K Street, Suite 200           Fax   907-243-1473          sahile@gci.net

JERRY W. MANN  
Vol. 1  
12/8/2005  
MANN v. HARTFORD INS.  
A05-0038 Civil

Page 19

```
 1   A    '93.

 2   Q    '93 Suburban.a

 3   A    Yes, uh-huh.

 4   Q    Did you have your existing policy with GEICO at hand when
 5        you talked to the Hartford person, do you know?

 6   A    No, I don't recall, I'm sure I didn't.

 7   Q    Do you recall whether the Hartford person asked you what
 8        coverages you had at present?

 9   A    No, I don't remember.

10   Q    Okay.  Other than making sure that you had coverage that
11        would satisfy the bank, was there anything else about the
12        coverage that you wanted to change when you signed up with
13        Hartford, moving from Progressive to Hartford?

14   A    I didn't have -- I think I just had liability and possibly
15        uninsured motorist, and underinsured motorist's with
16        Progressive, but I didn't have the collision.

17   Q    Okay.  So you wanted to make sure you had collision
18        coverage?

19   A    Yeah.  And uninsured motorist's and everything the bank
20        required.

21   Q    Okay.  Did the bank require uninsured motorist's coverage?

22   A    Yes, they told me I had to have full coverage, had to have
23        everything so.....

24   Q    When they said full coverage, you took that to mean
25        including uninsured motorist's coverage?
```

Exhibit C  
Page 12 of 26 Pages

Computer Matrix, LLC  
310 K Street, Suite 200  
Phone - 907-243-0668  
Fax    907-243-1473  
jpk@gci.net  
sahile@gci.net

JERRY W. MANN                     12/8/2005                MANN v. HARTFORD INS.
Vol. 1                                                          A05-0038 Civil

Page 29

| | | |
|---|---|---|
| 1 | | document until recently, it was not with the insurance |
| 2 | | documents sent to me by Hartford. I guess my question |
| 3 | | about that is, are you sure, so you don't have a memory of |
| 4 | | seeing most of these documents, most of these pages before |
| 5 | | and I'm just wondering how you can be certain that you |
| 6 | | didn't see Page 6 if you're not sure whether you saw the |
| 7 | | pages, even the ones that have your writing on them? |
| 8 | A | Well, because it was important that I have uninsured and |
| 9 | | underinsured motorist's so I would have -- I would have -- |
| 10 | | you know, if they'd have sent that I would have seen that. |
| 11 | Q | Okay. |
| 12 | A | It would have been a very important issue to me. |
| 13 | Q | Did you understand at the time what underinsured and |
| 14 | | uninsured motorist's coverage was? |
| 15 | A | Yes. |
| 16 | Q | Okay. |
| 17 | A | Yes. |
| 18 | Q | So it says on Page 6, let's see, under the underlined |
| 19 | | heading there, one, two, three paragraphs there, it says, |
| 20 | | uninsured/underinsured motorist's coverage pays benefits |
| 21 | | for bodily injury, death or property damage caused by an |
| 22 | | uninsured driver, a hit and run driver, an insured driver |
| 23 | | whose bodily injury limits, liability limits are |
| 24 | | inadequate to cover the bodily injury losses incurred, and |
| 25 | | you understood that that's what UM coverage was? |

JERRY W. MANN  
Vol. 1  
12/8/2005  
MANN v. HARTFORD INS.  
A05-0038 Civil

Page 30

```
 1   A    Right.
 2        MR. KELLEY:  But we're not -- you're not trying to get in
 3   the back door.....
 4        MR. MAASSEN:  No.
 5        MR. KELLEY:  .....that that's the definition he
 6   understood.....
 7        MR. MAASSEN:  No.
 8        MR. KELLEY:  .....it to be?
 9        MR. MAASSEN:  No, I'm not.  I'm not.
10        MR. KELLEY:  Okay.
11   Q    But if you had seen this definition, you would have
12        understood what it was talking about?
13   A    Yes.
14   Q    I'm not trying to get you to admit that you did see it by
15        that question.
16        MR. KELLEY:  Thank you.
17   A    I'm not very well versed in insurance but I understand the
18        concept.
19   Q    Okay.  And that's an adequate explanation for your
20        purposes if you had seen it?
21   A    Yes.  That would have been very important to me if I had
22        have seen that.
23   Q    Okay.  I want to show you the original application, what
24        you have there is a copy.
25        MR. KELLEY:  But it parallels what you've got in your hand
```

Computer Matrix, LLC  
310 K Street, Suite 200  
Phone - 907-243-0668  
Fax    907-243-1473  
Exhibit C  
Page 14 of 24 Pages  
jpk@gci.net  
sahile@gci.net

JERRY W. MANN                    12/8/2005                 MANN v. HARTFORD INS.
Vol. 1                                                     A05-0038 Civil

Page 32

```
 1   Q    Now, I want to ask you some questions that are more in the
 2        nature of, you know, physical evidence and see if you'll
 3        agree with me about some of the things that I think these
 4        documents show.  First of all, would you agree with me
 5        that all four of those pages appear to have been stapled
 6        in the upper right-hand corner?
 7   A    Yes.
 8   Q    And maybe it helps if you look up at the light with it,
 9        but it looks to me as if they were stapled together twice,
10        once straight up and down and once at a slant, can you see
11        that?
12   A    No.
13   Q    Could you look at that and see whether that fits, the way
14        you see it?
15   A    It looks like there's a lot of staples, I don't know.
16        MR. KELLEY:  Well, hold it so I can see it.  All right.
17   A    I can see the two in the left-hand corner, but.....
18   Q    Okay.
19        MR. KELLEY:  At the top.
20        MR. MAASSEN:  Don't wreck my original document.
21        MR. KELLEY:  No, I won't.  Just you got me curious now,
22   now that you got me looking at staple marks, sorry.
23   Q    Well, and let me ask you something else here.  There are a
24        couple of fold marks in this.  And you can tell that it
25        was tri-folded like this, and I'll let you take a look at
```