Peter J. Maassen, ABA No. 8106032
INGALDSON, MAASSEN & FITZGERALD, P.C.
813 W. 3rd Avenue
Anchorage, AK  99501-2001
Phone:    (907) 258-8750
Fax:      (907) 258-8751
Email:    peter@impc-law.com

Attorneys for defendant,
Hartford Insurance Company of the Midwest

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JERRY MANN,<br><br>        Plaintiff,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY OF THE MIDWEST,<br><br>        Defendants. | No. A05-0038 CIV (RRB)<br><br>**DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT** |

The issue presented by this case is whether Plaintiff Jerry Mann's auto liability policy with Defendant Hartford Insurance Company of the Midwest ("Hartford") provides uninsured motorist ("UIM") coverage.  Hartford moved for summary judgment on September 2, 2005, contending that there was no genuine issue of material fact as to whether Mann had rejected UIM coverage "in writing," as Alaska law allows him to do, see AS 28.22.201(a)(3).

**INGALDSON,
MAASSEN &
FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Hartford's motion prompted further discovery by both parties, and on November 21, 2005, Mann opposed the motion and cross-moved for summary judgment. Mann's main arguments now appear to be (1) that the application form he reviewed and signed, on which UIM coverage was explained and specifically marked **"REJECTED"** (in bold, underlined capitals) to reflect Hartford's understanding of what Mann had asked for telephonically, is not a "writing" for purposes of Alaska law; (2) that a cancellation of the policy due to Mann's nonpayment of premiums, followed by a retroactive reinstatement, was an event that required Hartford to renew its offer of UIM coverages; and (3) that a later renumbering of the policy for Hartford's internal record-keeping purposes also required a new UIM offering.

None of Mann's arguments has merit, and Hartford's motion should be granted.

**ARGUMENT**

**A. There Are No Real Issues About Mann's Review and Signing of the Complete Application Form**

Mann first attempts to cast doubt on the legitimacy and completeness of the application form that he admits having signed on April 8, 2001. Both the form itself, however (see Ex. A), as well as the process by which it was created to reflect the insured's coverage choices, are straightforward and

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 2 of 18

not subject to serious question.

The application form is essentially a proposal based on what the insured has told a Hartford representative over the telephone, presented in writing, via the mail, for his review and confirmation. See Ex. B (Patton depo.) at pp. 47-48, 64. Although the form has reduced to writing the coverages and exclusions that the insured has requested orally, it expressly encourages the insured to make any changes that he wants, to sign the change section (Ex. A at p. 7) and the application (id. at p. 8), and to send the form back to Hartford in order to complete the process.[1] With regard to UIM coverage specifically, the form in bold letters **"recommend[s] that you include [UIM] coverages at limits equal to your Bodily Injury Liability limits."** Ex. A at 6. At his deposition, Mann candidly admitted that the form's description of UIM coverage would have been sufficient to educate him about what it was that he was accepting or rejecting. Ex. C (Mann depo.) at 29-30.

The form also shows within a bordered box, in bold lettering, **"Your Coverage Selections"** – that is, the UIM selections that the prospective insured has made over the telephone – and the form instructs, again in bold letters, that

---

[1] Mann appears to essentially agree that this is how the process works. See Opp. at 10.

**INGALDSON,
MAASSEN &
FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 3 of 18

**"[i]n order to confirm the coverage selection shown above, you must sign this form on page 7."** Id.  The form further states, "Please refer to the following section if you would like to CHANGE you[r] coverage selection." Id.

With regard to Mann's selections within the bordered box, the form has the bold, underlined, and capitalized word "**REJECTED**" after each of the two UIM selections (UIM and UIM Property Damage), to reflect the Hartford representative's understanding of what Mann had requested orally over the telephone. Id. Given the opportunity to confirm in writing that these were indeed his selections, Mann did so; he signed on the next page, below the bold inscription that basically reiterates the previous page's instruction that written confirmation is necessary: **"You . . . must sign below to confirm your coverage selections for Uninsured/Underinsured Motorists Coverage. . . ."** Id. at 7. The only change Mann made in the "Change Section" on page 7, which again laid out all the options for UM/UIM coverage, was to add "Comprehensive and Collision Coverage for damage to a rental vehicle." Id.

Mann's recent deposition testimony was consistent with an intent to reject UIM coverage. He did not recall whether he had UIM coverage with his earlier insurers, Ex. C at 14-15; the only reason he thought he would have wanted it from Hartford in 2001 is that his bank required "full coverage" for a new 1993

**INGALDSON,
MAASSEN &
FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Suburban that it was financing, id. at 18-19. However, the bank's obvious interest would have been to protect its investment in the vehicle, not to ensure that Mann had UIM coverage. If Mann could not remember having had UIM coverage before, his testimony gave no reason why he would have decided it was important to him in 2001.

Mann states in his Affidavit (Ex. B to the Opposition) that he does not recall having seen page 6 of the application form – the critical page which he signed in order to confirm his UIM coverage selections – "until recently," and that "[i]t was not with the insurance documents sent to me by Hartford." It is Hartford's understanding, however, following Mann's deposition on December 8, 2005, that Mann is not going to pursue this factual argument. Mann has a serious lung disease (unrelated to the issues in this case) and takes medication that, he concedes, makes it difficult for him to remember things. Ex. D (Mann depo.) at pp. 6, 11, 13. At his deposition, for example, he did not remember discovery responses that he had reviewed and signed just two weeks before. Id. at 12, 13. With regard to the application, he did not even recall having seen the pages that he acknowledged he must have seen because his own handwriting appeared on them,

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

i.e., pp. 3, 4, 7, and 8.[2]  See Ex. D (Mann depo.) at pp. 25, 26, 35-36.

Even if Mann does maintain that he was not sent the critical pages 5-6 of the form, no reasonable finder of fact could accept that as more likely true than not true. The notion that he received, reviewed, and wrote on pages 3, 4, 7, and 8 of the application form, as he admitted he did, but did not receive the critical pages 5-6 as well was shown by the physical evidence to be highly unlikely; the four double-sided pages had all been folded and stapled in the same places, showing the same pattern of staple holes and creases, see Ex. C (Mann depo.) at pp. 32-34.[3]  Finally, it would be patently unreasonable to contend that Hartford, which is in the business of selling insurance coverage, intentionally withheld from its insured an application page that encouraged him to purchase additional coverage, and then, when it got the form back in the

---

[2] On page 3, Mann wrote in the year he had been licensed in Alaska (1990); on page 4 he checked a box stating that he had had no "accidents, violations, thefts or vandalisms other than what may be listed above;" on page 7 he checked a box to "[i]nclude Comprehensive and Collision Coverage for damage to a rental vehicle," then signed and dated the page to confirm his "coverage selections for [UIM] Coverage, [UIM] Property Damage Coverage and Coverage to a Rental Veh[i]cle;" and on page 8 he identified his previous insurer (Geico), wrote in the date the Geico policy expired, checked a box stating that he was not "insured through an Assigned Risk Plan," and then signed and dated the page as the applicant. Mann admitted that all this writing was his. Ex. C (Mann depo.) at pp. 24-26.

[3] Mann states in his Opposition that "[t]he whereabouts of the original application [are] unknown," Opp. at 6, but this is mistaken. At the same time that a complete copy of the form was produced in October 2005, Mann was duly informed that the original was at the office of Hartford's counsel and available for inspection. See Ex. D at p. 1.

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 6 of 18

mail, slyly conformed the missing page to the other pages' staple and fold marks before slipping it back into the form. Indeed, it does not appear that Mann is making that far-fetched argument. Having admitted to seeing and writing on pages 3, 4, 7, and 8 of the form, he cannot reasonably dispute that he was sent the other pages as well.

To cap off a labored argument about what he considers to be shortcomings in Hartford's record-keeping, Mann also contends "that computer systems are fallible, and it is likely that Hartford mistakenly typed in 'Rejected' on the first page of the Supplemental Application." Opp. at 9-10. While such a mistake is certainly <u>possible</u>, to call it "likely" is a stretch. But given that mistakes in transcription or communication do sometimes occur, Hartford's application process takes them into account by calling the prospective insured's attention forcefully to **"Your Coverage Selections"** that were made telephonically, inviting changes, and noting that a rejection of UIM coverages will not be effective unless the form is signed on page seven. <u>See</u> Ex. A at p. 6. The only issue in this case, therefore, is whether Mann's signature on a form that clearly describes and rejects UIM coverage is "a writing" for purposes of satisfying Alaska law.

**B.  The Signed Application Form Is "A Writing"**

Mann's argument that the signed application form is not "a

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 7 of 18

writing" for purposes of AS 28.22.201(a)(3) is too strained. According to Mann,

> The writing requirement would have been satisfied if Plaintiff had, with his own hand, put in a check mark or a "X" in the clause stating "I have read the explanation, and I reject UM/UIM coverage." Plaintiff did not.

Opp. at 12. What Mann fails to explain is any meaningful difference between his proposed "check mark or 'X'" and what appears here: (1) The explicit statement that under **"Your Coverage Selections,"** UIM coverages have been "**REJECTED**" (per the insured's telephonic instruction), (2) explanation that this selection is invalid (i.e., UIM coverage will be provided) unless confirmed by the applicant's signature on the following page, and (3) the insured's signature right below the statement that signature below "confirm[s] your coverage selections for Uninsured/Underinsured Motorists Coverage." See Ex. A at 6-7.

Contrary to Mann's implication, the Alaska legislature did not mandate a particular form for the "writing" that satisfies the statute. An X or a check mark is no better or worse than a signature, as long as both show that the insured intended to reject UIM coverage.[4] Several courts have addressed similar

---

[4] Mann contends that his actual intent is irrelevant, citing two cases. Opp. at 6. Those cases, and others, stand for the proposition that intent is irrelevant only if there is no writing, in which event statutory coverage is provided by default. If there is a writing, as here, the court must determine what the parties intended by it. Carlson v. Reliance National Indemnity Co., 2005 Wash.App. LEXIS 2887 (2005) at p. *6 ("Because a writing existed here, the court could consider the parties' intent"); Rankin v. West

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 8 of 18

issues.

Less than two months ago, in Carlson v. Reliance National Indemnity Co., 2005 Wash.App. LEXIS 2887 (2005) (copy attached as Ex. E), the Washington Court of Appeals addressed an argument similar to the one Mann makes here. As in Alaska, a Washington insured's rejection of UIM coverage must be in writing. Carlson at *4, citing RCW 48.22.030(4). An insurance agent had prepared an application for a taxicab company, in which he wrote in UIM limits substantially lower than the liability limits that the company was requesting. The company's owner signed the application but "did not sign a form rejecting UIM coverage or selecting lower UIM limits." Carlson at *2. A cab driver and passenger sought higher UIM coverage on grounds that the signed application, without a separately signed form, did not constitute the "writing" required by statute.

The court disagreed. It explained:

> When there is a writing evidencing a rejection of UIM coverage, the court may consider that writing and other extrinsic evidence of the insured's intent to determine the effectiveness of the rejection. But if no writing exists, the intent of the parties is irrelevant. Writings having been held to be sufficient to evidence an intent to reject UIM coverage include a bid proposal, an insurance binder, and UIM selection and rejection forms. . . .

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

American Insurance Co., 149 Cal.Rptr. 57, 61 (Cal.App. 1978) (distinguishing case where intent was relevant because a writing existed).

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 9 of 18

> Mr. O'Neill, the authorized representative of Park N' Ride, did not sign Reliance National's UIM waiver form. [The plaintiffs] argue there was no written waiver of the UIM limits because the form was unsigned. But neither [statute] nor case law requires that a specific form be signed. The insured must simply evidence his intent to waive or reduce the UIM coverage in a writing that is specific and unequivocal and demonstrates a desire to waive such coverage. The waiver must also indicate the amount of coverage the insurer had in mind.[5]
>
> Mr. O'Neill signed the insurance application [which] clearly indicated the UIM limits as $25,000 per person/$50,000 per accident. Shortly after the application was made, Park N' Ride received an insurance binder and declarations page that also indicated those same UIM limits. These writings are specific and unequivocal in reflecting the amount of coverage. This signed application, binder, and declarations page satisfy the requirements of a writing under RCW 48.22.030(4). The trial court did not err by concluding a written waiver existed.

Carlson at **4-6 (citations omitted). The application and declarations page here show the same information that was deemed to constitute an adequate "writing" in Carlson: they are specific and unequivocal, they show a desire to reject UIM coverage, and the information they convey is confirmed "in writing" by the insured in the form of his signature. See also Cochran v. Great West Casualty Co., 67 P.3d 1123, 1124 (Wash.App. 2003) (signature on UIM selection form that "expressly selected an alternate amount of UIM coverage" was sufficient to waive the maximum policy limits "in writing" as

---

[5] Hartford's form recommended UIM "coverages at limits equal to your Bodily Injury Liability limits" (Ex. A at p. 6) and on the next page set out all

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

required by statute); Weir v. American Motorists Insurance Co., 816 P.2d 1278, 1279 (Wash.App. 1991) (bid proposal requesting "Minimum Statutory Uninsured Motorists (where Mandatory)" coverage met statutory requirement of a "writing").

A Texas court addressed essentially the same issue, and decided it the same way, in Ortiz v. State Farm Mutual Automobile Insurance Co., 955 S.W.2d 353 (Tex.App. 1997). The plaintiffs had filled out an application form provided by the Texas Automobile Insurance Plan ("TAIP"), which required that they check boxes next to UIM coverages to either accept or reject them. They checked the "reject" boxes and signed the application forms. They later contended, however, that the application forms were not the "written rejection" required by statute. Ortiz, 955 S.W.2d at 356.

The Texas court first addressed the plaintiffs' argument that a "written rejection" had to take a specific form. It noted that many states did require specific language in a rejection but that Texas (like Alaska) did not:

> The Texas Insurance Code does not specifically require that an insured's rejection of UM/UIM or PIP coverage be attached or incorporated in the policy. Instead, [the statutes] only require the rejection of coverage to be in writing. Adding language to these unambiguous provisions by specifying the procedures to effectuate a written rejection would unnecessarily intrude upon the province of the legislature.

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

the UIM options available (id. at p. 7).

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 11 of 18

Ortiz, 955 S.W.2d at 357-58.

The court next rejected the plaintiffs' contention that the nature of UIM coverage was not adequately explained in the application, id. at 359.[6] Finally, it rejected an argument similar to the one Mann makes here, that the "application did not constitute a valid written rejection since it did not require a signature next to the checkmark where appellants indicated their rejection." Id.. The court explained:

> Absent a signature, appellants argue, the rejection was merely oral. We disagree. Though the application in question did not provide for a signature at the point of rejection, it did require the applicant to sign at the bottom of the form, which was on the same page as their rejection of coverage. We hold that the TAIP application contains clear and express language, demonstrating appellants knew what they were rejecting.

Ortiz, 955 S.W.2d at 359.

Here, too, the application contains "clear and express language" regarding the nature and availability of UIM coverage, along with the insured's signature at the bottom of the form. This is a "writing" under any common-sense understanding of the statutory term. See Leisnoi, Inc. v. Stratman, 154 F.3d 1062, 1069 (9th Cir. 1998) ("in the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning'"

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 12 of 18

(citations omitted)). The only objectively-based conclusion must be that Mann intended, by his signature, to confirm "in writing" his rejection of UIM coverage.

### C. Reinstatement of the Policy After Cancellation for Nonpayment Did Not Require A New Opportunity to Reject UIM Coverage

Mann contends that there were two unusual events in the life of his Hartford policy that required Hartford to give him another opportunity to reject UIM coverage in writing: (1) a brief cancellation for nonpayment, followed by retroactive reinstatement once the payment was made; and (2) an internal renumbering of the policy. See Opp. at 12-15. These arguments are also without merit, and Mann's own testimony does not support them.

First, with regard to the cancellation for nonpayment and the subsequent reinstatement, Mann argues, "Despite the fact that Defendant used the old Policy Number (55 PHF 569115), the Policy was a new one requiring the issuance of Underinsured Motorist coverage, unless rejected by the insured in writing." Opp. at 13. But this is conclusory and unsupported. Simply stating that the reinstated policy was "a new one" does not make it so. Logically, the policy "used the old Policy Number" because it was not a new policy, it was the same old policy

---

[6] This is not an issue here, as Mann conceded at his deposition that Hartford's explanation of UIM benefits in the application was adequate. Ex.

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 13 of 18

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

reinstated. Indeed, this was Mann's own understanding – that his existing policy was "reinstated" once Hartford received his late payment. Ex. C (Mann depo.) at 37; id. at 45 ("it says here Hartford cancelled my insurance but then they didn't . . . really cancel it"); id. at 46 ("I don't recall why the payment didn't get there but . . . they . . . reinstated my insurance"); id. at 47 ("they reinstated my insurance").

Alaska Statute 21.89.020(c) requires that the UIM offering be made "initially and at each renewal." The retroactive reinstatement of Mann's policy did not occur at the "initial" stage of the insurer-insured relationship, nor was it a renewal; therefore, under the plain language of the statute, no offering was required.

Alaska law further provides that UIM coverage, once rejected in writing, "may not be included in a supplemental, renewal or replacement policy unless the insured subsequently requests [UIM] coverage in writing." AS 28.22.201(a)(3). Even assuming that the reinstated policy was not the same old policy but rather was a "replacement" policy, Hartford legally could not include UIM coverage in the policy unless Mann expressly requested it, in writing, which he indisputably did not do.

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

D (Mann depo.) at 29-30.

D. **Renumbering the Policy Did Not Require A New Opportunity to Reject UIM Coverage**

Nor was the later renumbering of Mann's policy an event that required Hartford to make a new offer of UIM coverages. Mann states that "[e]ffective March 31, 2002, Defendant issued Plaintiff a new policy of insurance, policy number 55 PHF 975169," Opp. at 13-14, but this is highly misleading; there was no "new policy," only a renumbering of the existing policy for clerical purposes. As Hartford's Director of Personal Lines Product Management, William Patton, explained in his Affidavit (Ex. 2 to Hartford's Motion, at ¶ 2), Mann's policy was given a different number "because of a change in our computer support." Patton further explained at his deposition:

> A. The policy renewed for that '02 to '03 policy term was then [computer-]system supported and that's when the new policy number was administered to the same policy and same coverages, but it was administered to enable the system to support the policy.
>
> Q. Okay. So you issue new policy numbers on the same policy at the Hartford?
>
> A. Yes.

Ex. B (Patton depo.) at p. 82.

The renumbering of the policy did not result in the issuance of "a new policy of insurance," as Mann now asserts. In fact, he testified at his deposition that he was not even

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

aware that it had happened:

> Q. Some time, I think a few months later, the policy number was changed on your Hartford auto policy, are you aware of that?
>
> A. No.
>
> Q. Okay. Did you know at the time that your policy number had been changed?
>
> A. No.
>
> Q. Do you recall getting anything from Hartford that told you that your policy number had changed?
>
> A. No.
>
> Q. Do you know today as we're sitting here that your policy number was changed?
>
> A. No.

Ex. D (Mann depo.) at 38.

It is unreasonable to contend that the clerical change from one number to another, which had no effect whatsoever on the insured or his coverage (to the extent that he was not even aware of the change), constituted the initiation of a new policy that required a new offering of UIM coverages. Again, even assuming that the renumbered policy was a "replacement" policy instead of the same old policy with a new number, Alaska law did not require a new offering of UIM coverages, and indeed prohibited Hartford from including UIM coverages without a written request from Mann that it do so.

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

## CONCLUSION

This case presents the unfortunate, but not unusual, situation in which an insured duly rejected insurance coverage that, in hindsight, he would have been prudent to have purchased. The Alaska legislature has not made the purchase of UIM insurance mandatory, as it could have done; instead, it gives insureds the choice of rejecting the coverage, a choice that the law respects as long as it is made "in writing." There is no reasonable argument that the application form at issue here, which explains UIM coverage, encourages its purchase, notes the insured's decision to reject it but gives him ample opportunity to either confirm that decision by his signature or change his mind, does not constitute a "writing" for purposes of Alaska law. Hartford is therefore entitled to summary judgment.

DATED:   January 9, 2006

>   s/Peter J. Maassen
> ABA No.   8106032
> INGALDSON, MAASSEN &
> FITZGERALD, P.C.
> Attorneys for defendant, Hartford
> Insurance Company of the Midwest
> 813 W. 3rd Avenue
> Anchorage, AK  99501
> Phone:   (907) 258-8750
> Fax:     (907) 258-8751
> Email:   peter@impc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2006, a copy of the foregoing DEFENDANT

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 17 of 18

INGALDSON,
MAASSEN &
FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

HARTFORD'S COMBINED REPLY TO OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO CROSS-MOTION FOR SUMMARY
JUDGMENT was served electronically on:

Leonard T. Kelley, Esq.
821 N Street, Suite 206
Anchorage, AK  99501

s/Peter J. Maassen

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

*HARTFORD ADV. MANN*
No. A05-0038 CIV (RRB)
DEFENDANT HARTFORD'S OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT
Page 18 of 18