Leonard T. Kelley
Kelley & Canterbury, LLC.
821 "N" Street, Suite 206
Anchorage, Alaska 99501
Tel: (907) 276-8185
Fax: (907) 279-3829
Email: kelleyandkelley@acsalaska.net
Attorney for the Plaintiff
Alaska Bar No. 7605039

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| JERRY MANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HARTFORD INSURANCE ) | |
| COMPANY OF THE MIDWEST, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | Case No. A05-00038 CIV (TMB) |

**REPLY TO OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**

COMES NOW plaintiff, Jerry Mann, by and through his counsel Kelley & Canterbury, LLC., and hereby submits his reply to Defendant Hartford's Opposition to Plaintiff's Cross-Motion for Summary Judgment.

**I.   Review of Relevant Facts**

Hartford correctly points out that its insured, Jerry Mann, is an older person who suffers a lung disability. It is difficult for Mr. Mann to get around and his memory is not as good as it once was (Mann's transcript page 6, line 10), but these facts do not help Hartford's case. Hartford is the America Association of Retired People's ("AARP") representative in Alaska and a preferred carrier. Mr. Mann is a member of AARP. Hartford apparently solicited Mr. Mann for his automobile liability insurance needs. Mr. Mann, like most older folks, was looking for a

good deal and special treatment (Mann's transcript page 17, line 25). Mr. Mann's complete deposition transcript is attached hereto as Exhibit 1.

Plugging

When Plaintiff filed his Cross-Motion for Summary Judgment on November 21, 2005, Plaintiff tangentially referred to Hartford's Policies and Procedures on page 10. Plaintiff knew that Hartford had a Policies and Procedures Manual (and document retention policy). At the time of drafting Plaintiff's Cross-Motion for Summary Judgment, Plaintiff's counsel believed that the uncontroverted evidence supported the statement: "These procedures support Plaintiff's position that Hartford improperly utilized a 'rejection' form in violation of AS 28.20.445(e)(3) and AS 21.89.020(e)" (*See* Plaintiff's Cross-Motion for Summary Judgment page 10).

On January 6, 2006, Defendant responded to Plaintiff's discovery requests (Exhibit 2 attached)[1], and Plaintiff learned:

1. Request for Production No. 1: There is a Procedures Manual, which is subject to a Confidentiality Order (IMF 213-227).

2. Request for Production No. 2: No separate manuals/documents dealing with UM/UIM coverage in Alaska were produced, but Mr. Patton indicated that there are written policies for doing business in Alaska with AARP's insured (Patton's transcript page 44, line 19).

3. Request for Production No. 10: Defendant was requested to produce retention and deletion procedures utilized by Hartford for the past 7 years. Hartford produced no documents, even though Mr. Patton believes there is a written policy (Patton's transcript page 38, line 4).

4. Request for Production No 7: The initial quotation document Mann talked about was not found. This document may have had some bearing on the ultimate issue of coverage.

---

[1] These documents are filed under seal and must be handled according to the Court's Order at Docket 25.

<u>Mann v. Hartford Insurance Co. of the Midwest</u>, *Case No. A05-00038CIV (TMB)*
**Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment**            Page 2 of 11

It is Plaintiff's position that Hartford's Policies and Procedures Manual confirms that Hartford always knew that Mann's signature on Page 7 of the Supplemental Application acknowledged the fact that Mann was given the AS 21.89.020(c) "offer for optional UM/UIM coverages" and Mann's signature was not a rejection of UM/UIM coverages. Hartford's Procedure Manual at IMF 220 and 221 states, that if Hartford was going to plug in "Rejected" for UM/UIM coverage, Hartford would document the file with a plugged coverage letter to the insured. This was not done. Hartford's policy at IMF 224, Step 3, specifically requires Hartford to follow the Alaska specific coverage procedures, which are set out in AS 21.89.020(c)(1). If Hartford had checked AS 21.89.020(c)(1), it could have confirmed that Uninsured/Underinsured Motorist coverage must be rejected in writing by the insured. Just as important, at IMF 224, Hartford's procedures require an insured (Mann) to "X" the appropriate box to approve his selection. Hartford's own procedure verifies that the insured must take the affirmative act in writing to reject UM/UIM coverage by placing his mark in the box stating "<u>I have read the explanation, and I reject Uninsured/Underinsured Motorists Coverage.</u>" An "X" in the box rejecting UM/UIM coverage would be Mann's "clear and express" writing.

In this case, a "X", a "√", or Mann's initials were not placed in any coverage/rejection box by Mann under the Uninsured/Underinsured Motorists Coverage section of the form. Hartford should have followed state plugging guidelines of Alaska Statute 21.89.020(c)(1) and issued the Policy with UM/UIM policy limits equal to policy the limits of Mann's liability coverage for bodily injury or death. Nevertheless, by operation of Alaska law, Mr. Mann is covered for Underinsured Motorist benefits by Hartford.

The cases cited by Hartford on pages 9 through 18 of its brief are not hurtful to Mann's case. The Washington case of <u>Carlson v. Reliance National Indemnity Co.</u> may have turned on

the issue that an insurance agent prepared the application for the taxi cab company.  In this case, Hartford was not utilizing an outside agent, but a company representative.  The <u>Carlson</u> case seems similar to a Florida case:

> Florida has indicated that an agent who is not licensed by the company to whom the application is directed is an insurance broker for the insured, and that such a broker can waive the statutory right of an written rejection and make a knowing rejection for his client.

*Schermer* § 19.10 at 27.

In any case, Plaintiff believes that the <u>Carlson</u> case would have been decided differently if the Washington Court knew "Mann" did not mark the UM/UIM rejection box with his own hand and Hartford has a procedure requiring an insured to mark the rejection box to show his intent to reject UM/UIM coverage.

Most, if not all, of the cases cited by the defense requires "<u>clear and express</u>" language regarding the nature and availability of Underinsured Motorist coverage and that the insured's rejection of UM/UIM coverage must be in <u>writing</u>.  The insured's own writing is important.  The Texas Court in <u>Ortiz</u> found that a valid rejection occurred because the insured **checked** the rejection box and signed the form.  If the Texas Court knew that Hartford "plugged" in the words "Rejected" and Mann did not check or mark the rejection box on the form, the Texas Court would likely have found there was no valid written rejection of Underinsured Motorist coverage.

Additionally, the application forms are ambiguous.  They do not contain "clear and express" language with regard to the two separate entitlements Hartford is required by law to provide its insured, to wit: 1) minimum UM/UIM coverage, and 2) optional UM/UIM coverage.  Any ambiguity is construed against the drafter insurer.  <u>Makarka v. Great American Ins.</u>, 14 P.3d 964 (Alaska 2000).

**II.     Further Discussion**

**A.     Application Forms**

Defendant Hartford admits that the Application for Insurance is prepared from oral discussion with the insured (*see* Page 2 of Defendant's Opposition).  Defendant Hartford, in pages 2 through 17 of its Opposition to Plaintiff's Cross-Motion for Summary Judgment, argues that the Application is a proposal (*see* Page 3, ¶ 1 of Defendant's Opposition) based upon what Mann told a Hartford representative, that Mann actually told a Hartford representative that he rejected Uninsured/Underinsured Motorist coverage, and that Mann intended to reject UM/UIM coverage because he signed page 7 of the Application.  Such is not the case.  The following facts and law are undisputed:

1. The Application for Insurance is not a proposal but is an essential part of the Contract for Insurance.  AS 21.42.230 reads in part: "Each insurance contract shall be construed according to the entirety of its terms and conditions as set out in the policy and . . . application that is a part of the policy."  Application forms (including the UM/UIM rejection form) should be approved by the State of Alaska's Division of Insurance per AS 21.42.120(a) for compliance with state law.  *See also* Geico v. Graham-Gonzalez, 107 P.3d 279 at 287 (Alaska 2005).

2. There is no credible evidence that Mann on or about March 29, 2001 told a Hartford representative he rejected UM/UIM coverage, because, among other things, Hartford deleted and did not preserve a copy of the service notes of the critical dates from 3/29/01 to 8/01 (Patton's transcript page 37, line 14; page 39, line 23; and page 50, line 3).  Additionally, an oral rejection of UM/UIM coverage violates AS 21.89.020(c) and (e), because a rejection/waiver must be made in writing by Mann (*See also* Hartford's Procedure Manual at IMF 224).

3. There is no evidence that Mann rejected UM/UIM coverage in writing or otherwise. Mann, at his deposition, told Hartford's counsel that he needed full coverage (Mann's transcript page 18) and he wanted UM/UIM coverage (Mann's transcript page 19, line 19). Mann assumed he had UM/UIM coverage (Mann's transcript page 39 and page 42, line 18). When told he did not have UM/UIM coverage, he ordered UM/UIM coverage on or about January 16, 2004 (*see also* Plaintiff's Cross-Motion for Summary Judgment page 14 regarding the Later "Purchase").

4. Defense counsel questioned Mr. Mann about the folding and stapling of the Application forms to which Plaintiff testified he had no idea if the forms stayed together during their lifetime (Mann's transcript page 34, lines 20-21). He acknowledged his signatures and handwriting. Mann stated he never agreed to waive UM/UIM coverage in writing (*see* Exhibit 1 – complete transcript of Jerry Mann's deposition and Exhibit 3 – Mann's Affidavit).

B. **The Application Forms are not a written rejection of UM/UIM coverage by Mann.**

Mann has acknowledged that the initial Application form and Supplemental Application was an adequate compliance of Hartford's duty to offer "optional" UM/UIM coverage pursuant to AS 21.89.020(c).[2] *See* Peters v. Schumacher Enterprises, Inc., 22 P.3d 481 (Alaska 2001). Mann's position is that he, the insured, must specifically reject/waive Underinsured Motorist coverage in writing, or, by statute (AS 21.89.020), he has UM/UIM coverage.

The burden of proving a valid waiver of UM/UIM coverage occurred is on Hartford, not the insured. Schermer § 19.10 at 26. The Alaska Legislature did not require a particular, acceptable UM/UIM rejection form; however, the Legislature did authorize the Division of

---

[2] UM/UIM optional policy limits ranging from $100,000 to $1,000,000 for bodily injury, coverage for UM/UIM property damage, and coverage for damage to a rental car.

Insurance to approve or deny Hartford's rejection/waiver form to ascertain if it met the requirements of state law.  *See* AS 21.42.120.[3]

C.  **Policy Cancellation for Non-Payment**

Hartford sent Plaintiff a Cancellation Notice.  Mr. Patton said the Policy was cancelled (Patton's transcript page 52, line 22).  Black's Law Dictionary, 7th Edition at page 197, states "cancel" means "to terminate a promise, obligation or right."  If Hartford cancelled their promise to indemnify Mann on one day, but, after payment of money by Mann, agreed to indemnify Mann for any automobile loss thereafter, then a <u>new policy</u> event occurs.  The insured-insurer relationship ended when Hartford cancelled Policy No. 55 PHF 569115 around January 2002.  On January 25, 2002, when Hartford agreed to indemnify Mann after the policy cancellation, this is a time when Hartford "initially" has to offer UM/UIM coverage under AS 21.89.020.  January 25, 2002 marked the start/beginning of a new insured-insurer relationship between Mann and Hartford, even though Defendant used the same Policy Number.  There is no definition in the Alaska Statutes under Title 21 or Title 28 defining the word "reinstate."[4]  Hartford's use of the words reinstatement, supplemental, or replacement to describe the new Policy relationship of 1/25/02 is conclusionary at best.

D.  **New Policy**

Hartford changed the Policy Number from 55 PHF 569115 to 55 PHF 975169 on March 31, 2002.  Contracts of Insurance are documents of adhesion.  <u>Makarka v. Great American Ins.</u>, 14 P.3d 964 (Alaska 2000).  The insured has no bargaining power whatsoever.  Mr. Mann had no

---

3  The undersigned contacted the Alaska Division of Insurance.  The Division indicated that Hartford failed/did not file a UM/UIM waiver form for approval.  *See* Exhibit 3 to Plaintiff's Motion Excluding Defendant's Evidence).
4  *See* AS 21.90.900, AS 28.22.311, AS 28.20.630, and AS 28.40.100.

control over Hartford issuing a new Policy, except that AS 21.89.020(c) and (e) requires that an insured be given the right to reject UM/UIM coverage in writing. Hartford's attempt to recast the issuance of the new Policy as a renumbering or replacement is without legal effect. The applicable statutes and regulations do not say that Mann's UM/UIM rejection/waiver under AS 21.89.020 does not apply if Hartford issues a new Policy (with a new Number) for clerical reasons or an internal system change.

On page 16 of Defendant's Opposition, Hartford states the new Policy issuance (55 PHF 975169) did not affect Mann, but it did. Mr. Patton, at his deposition, stated that there were several changes made under the new Policy No. 55 PHF 975169 (Patton's transcript page 77, line 8). While it is true that Mr. Mann was clueless to the fact that Hartford issued a new Policy, this does not change the law (Mann's transcript page 38). Few Alaskans are knowledgeable on insurance issues. That is why the Alaska Legislature enacted the Mandatory Insurance Law and, in particular, AS 21.89.020, requiring Hartford to provide its insured Mann UM/UIM coverage unless rejected by Mann in writing.[5]

### III.     Conclusion

Hartford is in the business of selling insurance products to senior Alaska consumers. Hartford is well aware of the fact that it must follow Alaska law. (*See* IMF 224 and Patton's Deposition Transcript). The Alaska legislature enacted AS 21.89.020 to provide Alaska consumers with the minimum protections should they be harmed by an Uninsured/Underinsured vehicle operator.

---

5  Hartford was also obligated to offer Mann with the "optional" UM/UIM coverages per AS 21.89.020(c).

By operation of law per Alaska Statute 21.89.020, it is mandatory for Defendant Hartford to include Underinsured Motorist coverage in Mann's Policy of Insurance unless Mann provides Hartford with a legally sufficient rejection/waiver of UM/UIM coverage in <u>writing</u>, not orally over the telephone.  The following undisputed facts warrant summary judgment in Plaintiff's favor.

    1.  Hartford plugged in the words "Rejected" on Page 6 of Mann's Insurance Application. Mann's signature and/or initials are not written any where on Page 6 of the Insurance Application agreeing to the rejection of UM/UIM coverage.  AS 21.89.020 requires Mann, not Hartford, to reject Underinsured Motorist coverage in writing.  Page 6 of Mann's Insurance Application is not a valid written rejection of UM/UIM coverage by Mann as intended by the Alaska legislature.

    2.  Mr. Mann should be afforded a presumption of UM/UIM coverage because:

        a.  Hartford did not have the Division of Insurance approve either Hartford's rejection form/language or its optional UM/UIM insurance form language as required by AS 21.42.120 and <u>Geico v. Graham-Gonzalez</u>, 107 P.3d 279 at 287 (Alaska 2005).

        b.  The affidavit of Mr. Patton was not based upon admissible facts, but supposition.  His opinion regarding the Supplemental Application was based upon hearsay.

        c.  The service notes from 3/29/01 to 8/01 were deleted by Hartford.

        d.  Hartford failed to follow its own Policies and Procedures Manual, which requires an insured to mark the UM/UIM coverage rejection box on the Supplemental Application.  A failure to mark the box signifies coverage is afforded (*see* IMF 224).

3.  Hartford did not follow its own "Plugging" procedures and policies (*supra* Section B). Hartford's procedures state, even though "Rejected" is plugged in by Hartford's representative on Page 6 of Mann's Insurance Application, the insured is advised to "'X' the appropriate to approve or change their selections" on Page 7 of the Insurance Application.  No boxes accepting or rejecting UM/UIM coverage had a "X", "√", or initials by Plaintiff Mann on Page 7 of the Insurance Application.  If Mann did "X", "√", or initial any one of these boxes, this would have been a valid "written" rejection of UM/UIM coverage by the insured.  Since Mann did not "X", "√", or initial any of the boxes accepting or rejecting UM/UIM coverage on Page 7 of the Insurance Application, then Hartford should have followed AS 21.89.020(c)(1) and issue the Policy with UM/UIM policy limits equal to policy the limits of Mann's liability coverage for bodily injury or death.

Plaintiff is entitled to summary judgment on the issue of coverage.  The Court should confirm that Mann has Underinsured Motorist coverage per AS 21.89.020 and refer the case to arbitration to determine damages according to the terms of the Policy of Insurance.[6]

Dated this 8th day of February, 2006.

                                                                      s/ Leonard T. Kelley
Kelley & Canterbury, LLC.
821 "N" Street, Suite 206
Anchorage, Alaska  99501
Tel:  (907) 276-8185
Fax:  (907) 279-3829
Email:  kelleyandkelley@acsalasa.net
Alaska Bar No. 7605039

---

6  The Court can defer ruling on the "optional" UM/UIM offer issue until the arbitrators decide damages.  After the Panel rules on Plaintiff's damages, Plaintiff will petition the Court to enter judgment per AS 09.43.110.

*Certificate of Service*
I hereby certify that on 2/8/06, a copy of the foregoing Reply to Opposition to Plaintiff's Cross-Motion for Summary Judgment was served electronically on Peter J. Maassen.

BY: s/ Leonard T. Kelley