IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JERRY MANN,<br><br>                    Plaintiff,<br><br>   vs.<br><br>HARTFORD INSURANCE COMPANY OF THE MIDWEST,<br><br>                    Defendant. | Case No. 3:05-cv-0038-TMB<br><br>O R D E R |

**INTRODUCTION**

This dispute centers around whether Plaintiff Jerry Mann had Uninsured/Underinsured Motorist ("UIM") coverage with Defendant, Hartford Insurance Company of the Midwest ("Hartford") when he was injured in a car accident in 2003. There are four motions currently pending. First, Hartford moves for summary judgment. Docket Nos. 14 (Mot.); 18 (Opp'n); 26 (Reply). Next, Plaintiff Jerry Mann has filed a cross motion for summary judgment. Docket Nos. 18 (Mem.); 20 (Mot.); (29 Opp'n); 32 (Reply). Mann also moves for oral argument on the summary judgment motions. Docket No. 22. Finally, Mann moves to exclude certain evidence and to adopt a presumption that Mann had UIM coverage during the relevant time period. Docket No. 33 (Mot.); 39 (Opp'n); 41 (Reply).

**BACKGROUND**

On May 13, 2003, Mann was injured in a car accident when he was hit by an underinsured driver. Following a civil suit, the other driver's insurance company paid the limits of its policy. At the time of the accident, Mann carried an automobile insurance policy with Hartford. Mann sought to recover on his Hartford policy. Although closer examination of the policy revealed that it did not provided UIM coverage, Mann asserted that he believed he had purchased UIM coverage. After lengthy correspondence, Mann instituted this declaratory judgment action, seeking UIM benefits. *See* Docket No. 14, Ex. 1 at 3–8; Docket No. 1, Ex. 2 (Compl.).

The section of Mann's policy at issue here is titled "**SUPPLEMENTAL APPLICATION: YOUR COVERAGE SELECTIONS IN ALASKA**." Docket No. 14, Ex. 2 at 7. The form explains that Uninsured/Underinsured coverage is optional in Alaska, but states "**we recommend you include both coverages at limits equal to your Bodily Injury Liability limits.** Your self-protection and that of your passengers should equal the protection you provide others." *Id*. In an outlined box mid-page, the form displays Mann's supposed rejection of UIM coverage:

---

**Your Coverage Selections**

Your coverage selections are shown below

Uninsured/Underinsured Motorists Coverage                **Rejected**

Uninsured/Underinsured Motorists Property Damage Coverage   **Rejected**

. . . .

In order to confirm the coverage selection shown above, you must sign this form on Page 7. Please refer to the following section if you would like to CHANGE your coverage selection

---

Docket No. 14, Ex. 2 at 7. The word "**Rejected**" was apparently entered by a Hartford representative while on the phone with Mann. *See* Docket No. 29 at 2; Ex. C at 7. On the following page of the policy, there is a large outlined box titled "**\*\*\*CHANGE SECTION\*\*\***" to be completed by the insured if changes to coverage selections are desired. There is a section labeled "Uninsured/Underinsured Motorist Coverage," a section called "Uninsured/Underinsured Motorist Property Damage Coverage," and a third section titled "Coverage for Damage to a Rental Vehicle." *Id*. at 8. In the third section, Mann checked a box indicating that he wanted comprehensive and collision coverage for damage to a rental vehicle. Below the change section, the form states, "You and your Spouse/Co-owner (if applicable) must sign below to confirm your coverage selections for Uninsured/Underinsured Motorist Coverage, Uninsured/Underinsured Motorists Property Damage Coverage and Coverage for Damage to a Rental Vehicle." *Id*. Mann's

ORDER

signature appears immediately below this clause, adjacent to a "sign here" icon. He does not dispute that the signature on the form is his own. Docket No. 29, Ex. C at 7, 19.

Hartford asserts that it is entitled to judgment as a matter of law that Mann validly rejected UIM coverage. Mann cross-moves for summary judgment, arguing that he is entitled to UIM coverage because he did not reject such coverage in a manner that conforms with Alaska law.

## DISCUSSION

The standards for summary judgment are well settled. Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party. 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

ORDER

In diversity cases, state law governs interpretation of substantive matters. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). Under Alaska law, "[t]he construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations, Inc. v. Ill. Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981). If a policy is ambiguous, it should be interpreted in favor of the reasonable expectations of the insured. *Bering Strait School Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994).

"The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988) (quoting R. Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)). The reasonable expectation approach is appropriate "regardless of whether the policy language is ambiguous . . . [but] 'is not to be used as an instrument for ignoring or rewriting insurance contracts.'" *Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 579 (Alaska 2001) (quoting *Guin v. Ha*, 591 P.2d 1281, 1285 (Alaska 1979)) (footnote omitted). To interpret the disputed terms of an insurance contract, courts look to "(1) the language of the disputed policy provisions; (2) the language of other provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions." *Holderness v. State Farm Fire & Cas. Co.*, 24 P.3d 1235, 1238 (Alaska 2001).

**I.     Alaska's Writing Requirement**

Alaska law requires that in order to validly decline UIM coverage the insured must so indicate in writing. AS 28.22.201(a)(3). The statute does not delineate what constitutes a "writing," nor has the issue been addressed by Alaska courts. Hartford argues that its practice of having an insurance agent type in the insured's selections pursuant to an oral indication from the insured on a form that is later signed by the insured is sufficient to satisfy the writing requirement. Mann argues that his signature was insufficient to constitute a rejection of UIM coverage in writing. In Mann's view, Hartford's policy of entering in the word "**Rejected**" on the insurance form and then sending it to the insured would satisfy the writing requirement if the insured "had, with his

ORDER

own hand, put a check mark or a 'X' in the clause stating 'I have read the explanation, and I reject UM/UIM coverage." Docket No. 18 at 12.  The clause Mann suggests he should have written in to satisfy the writing requirement appears in the "**\*\*\*CHANGE SECTION\*\*\***" which the insured is instructed to fill out to alter the coverage selections indicated on the preceding page.  *See* Docket No. 29, Ex. C at 8.  If Mann had made a check mark or "X" in this box, it would have been a double negative, as his coverage selection on the preceding page showed that he had already rejected UIM coverage.  If anything, checking the box would have shown Mann's *confusion* about his selections, rather than being a clear indication of his intent to reject coverage.

While in some instances a check mark or "X" immediately next to a coverage selection might be helpful in evincing the insured's intent, in this case such marks would be of little value.  The entire document was seven pages long.  The final two pages only dealt with UIM coverage and coverage for rental vehicles.  These pages unequivocally recommend carrying UIM insurance.  Mann's selections appear in an outlined box, and are in bold, underlined print.  The clause just above Mann's signature specifically states that the document must be signed to confirm the UIM selections.  To say that Mann's signature below this clause and the other conspicuous language of the policy does not constitute a "writing" for purposes of AS 28.22.201(a)(3) is a reach that the Court is unwilling to make.  It was not objectively reasonable for Mann to believe he carried UIM coverage after signing this document.

## II.     Policy Renewal and UIM Coverage

Alaska law requires that "[a]n insurance company offering automobile liability insurance in this state for bodily injury or death shall, initially and at each renewal, offer [UIM] coverage." AS 21.89.020(c).  Mann argues that two events occurred after the initial policy came into effect that triggered Hartford's statutory obligation to re-offer UIM coverage.  First, Mann's policy was briefly cancelled for non-payment, and was later reinstated with the same policy number.  He argues that this was a new policy that required a new offer of UIM insurance.  Next, Mann argues that he was issued a new policy number following computer upgrades at Hartford, an event which, he argues, also required a new offer of UIM coverage.

ORDER

In January of 2002, Mann's policy was cancelled for non-payment. When payment was received, the policy was reinstated with the same policy number. Despite the argument that this was a new policy, requiring a new offer of UIM coverage, Mann apparently understood that the old policy was simply reinstated.[1] In March of 2002, Hartford underwent a change in its computer support system. Mann's policy number was originally 569115. After the computer system was overhauled, Mann's policy was renumbered 975169. Mann argues that this event required Hartford to re-offer UIM coverage to Mann. However, even if the policy reinstatement after cancellation for nonpayment or the renumbering were renewals or new policies, Hartford could not have included UIM coverage in the renewed policy unless Mann requested it. While Alaska law requires insurance providers to offer UIM coverage initially and at each renewal, once an insured has rejected UIM coverage in writing, "the coverage may not be included in a supplemental, renewal or replacement policy unless the insured subsequently requests uninsured or underinsured coverage in writing." AS 28.22.201(a)(3). Hartford, therefore, could not have included UIM coverage in the policy after its reinstatement or renumbering unless Mann requested such coverage. The reinstatement and renumbering of Mann's policy were not events that required Hartford to re-offer UIM coverage.

### III.    Mann's Motion to Exclude Evidence and Create Presumptions

Mann moves to exclude the affidavit of William Patton, an employee of Hartford. Mann also moves to exclude the supplemental application that he signed to confirm the rejection of UIM coverage. Mann further argues that the Court should proceed under the presumption that Mann had UIM coverage at the time of his accident. The Court has reviewed these arguments and finds that they are without merit.

---

[1] In his deposition Mann stated, "I don't recall why the payment didn't get there but . . . they . . . reinstated my insurance." Docket No. 29, Ex. C at 23.

ORDER

**IT IS THEREFORE ORDERED:**

Hartford's motion for summary judgment at **Docket No. 14** is **GRANTED**. Mann's cross-motion for summary judgment at **Docket No. 20** is **DENIED**. The Court concludes that oral argument would not be helpful. The motion at **Docket No. 22** is therefore **DENIED**. Mann's motion to exclude evidence and create presumptions at **Docket No. 33** is **DENIED**. This matter is **DISMISSED**.

Dated at Anchorage, Alaska, this  24  day of May 2006.

 /s/ Timothy M. Burgess  
**TIMOTHY M. BURGESS**  
United States District Judge

ORDER